UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHNNIE PONDS | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 7:15-cv-02180-SGC |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Johnnie Ponds, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Mr. Ponds timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons that follow, the decision of the Commissioner will be affirmed.

### I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Mr. Ponds filed for DIB and SSI on November 27, 2012. (R. 25). His claims were initially denied on July 23, 2013. (*Id.*). The Administrative Law Judge ("ALJ") denied Mr. Ponds' applications on May 29, 2014. (R. 22-39). The Appeals Council denied review of the ALJ's decision, and Mr. Ponds timely appealed to this court. (R. 1-7); (Doc. 1).

Mr. Ponds was fifty-two years old at the time the ALJ issued a decision denying his application for benefits. (R. 35, 208). Mr. Ponds has a Graduate Equivalency Diploma, and his

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 11).

past relevant work experience includes retail assistant manager, janitor, forklift operator, and hazardous material control technician. (R. 63-64). Mr. Ponds claims he is unable to work due to problems with his lungs, kidneys, vision, back, shoulders, and collarbone; emphysema; "free bleeders;" hearing loss; and depression. (R. 190).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process here, the ALJ found Mr. Ponds had not engaged in substantial gainful activity since his alleged onset of disability. (R. 27). At step two, the ALJ found Mr. Ponds suffered from the severe impairments of emphysema with ongoing tobacco abuse and severe degenerative changes of the lumbar spine. (*Id.*). The ALJ also considered Mr. Ponds' impairments of correctable vision deficit, depression, and anxiety but determined these impairments were non-severe. (R. 28). At step three, the ALJ determined Mr. Ponds did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 13, 30). Before proceeding to step four, the ALJ determined Mr. Ponds had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). But the ALJ also found the following as to Mr. Ponds' RFC:

> [T]he claimant can rarely, up to one hour total over the course of an eight-hour workday, lift and carry up to 50 lbs. The claimant can frequently lift and carry up to 25 lbs. The claimant can sit at least two hours without limitation and a total of at least six hours over the course of an eight-hour workday. The claimant can stand at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can walk at least 45 minutes without interruption and a total of at least five hours over the course of an eight-hour workday. The claimant can frequently use his upper extremities for reaching overhead, pushing, and pulling. The claimant is not otherwise limited in the use of his upper extremities. The claimant can frequently use his lower extremities

for the operation of foot controls. The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant can occasionally work in dusts, gases, odors, and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can occasionally work with operating hazardous machinery. The claimant can occasionally work while subject to vibration. The claimant can frequently operate motorized vehicles.

(*Id.*).

In determining the RFC, the ALJ considered all Mr. Ponds' symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*). Regarding opinion evidence, the ALJ assigned significant weight to the opinion of Dr. Judy Travis insofar as she placed no limitations on Mr. Ponds, and she appeared to perform a thorough examination. (R. 32). However, the ALJ assigned no weight to Dr. Travis' diagnosis of depression/anxiety. (*Id.*).

The ALJ assigned little weight to the opinion of Dr. Perry Timberlake because, although Dr. Timberlake is a treating physician, the record shows only very limited meetings with Mr. Ponds. (R. 33). Only one meeting between Mr. Ponds and Dr. Timberlake appears to have occurred before Dr. Timberlake issued his opinion, and that meeting only lasted fifteen minutes. (R. 32). Further, Dr. Timberlake's findings and opinion were inconsistent with the presentation of the claimant and the claimant's activity levels noted in his function report. (R. 33).

At step four, the ALJ determined that Mr. Ponds' impairments and the limitations arising from them do not preclude him from performing all work activity. (*Id.*). The ALJ concluded Mr. Ponds could return to his past relevant work in retail, as well as other jobs in the economy which he could perform. (R. 34). In reaching this determination, the ALJ relied on the testimony of a vocational expert. (R. 34-35). Accordingly, the ALJ concluded his findings by

stating Mr. Ponds "has not been under a disability, as defined in the Social Security Act, from June 29, 2010, through the date of this decision." (R. 35).

## II.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Mr. Ponds raises three issues on appeal.  First, he contends the ALJ erred in "assuming to know" the opinion of Dr. Travis without proper support and in failing to fully and fairly develop the record by obtaining a functional assessment from her.  (Doc. 12 at 2-6).  Second, Mr. Ponds contends the ALJ erred in rejecting the opinion of Dr. Timberlake.  (*Id.* at 6-7).  Finally, Mr. Ponds contends the Appeals Council erred in refusing to consider an opinion of Dr. Travis that was submitted after the ALJ's decision.  (*Id.* at 8-10).

### A. <u>Dr. Travis' Opinion</u>

According to Mr. Ponds, Dr. Travis offered no functional assessment and was not asked to provide one by the ALJ.  (Doc. 12 at 10).  Mr. Ponds argues Dr. Travis offered no opinion whatsoever as to his limitations; instead, she "merely provided medical signs and findings." (*Id.*).  Mr. Ponds argues that, given Dr. Travis' silence on his limitations, it was wrong for the ALJ to assign substantial weight to Dr. Travis' "opinion" that Mr. Ponds suffered "no limitations." (R. 32).

Dr. Travis evaluated Mr. Ponds as a consulting physician.  (R. 32).  Dr. Travis did not issue an opinion that Mr. Ponds could not return to past relevant work.  Instead, she reported various medical findings.  (R. 277-82).  Dr. Travis' findings show that Mr. Ponds was not limited

6

in his range of motion, at least as to certain axes of movement. (R. 280-82) (finding "normal" range of motion on most measurements, "normal" dexterity, and "normal" grip strength). Dr. Travis' findings include an assessment that Mr. Ponds suffered lower back pain with degenerative changes which were visible by x-ray and resulted in decreased range of movement during an examination. (R. 280). Dr. Travis' assessment further notes Mr. Ponds suffered from emphysema and other afflictions. (*Id.*).

It is clear the ALJ reviewed Dr. Travis' findings. (R. 32). The ALJ's opinion states he assigned substantial weight to Dr. Travis' opinion to the extent she found no limitations of Mr. Ponds' ability to work. (*Id.*). The ALJ also credited Mr. Ponds' own reports of his limitations when they were corroborated by medical assessments, including those of Dr. Travis. (R. 33). In short, Dr. Travis' findings were part of the overall record considered by the ALJ in reaching the conclusion that Mr. Ponds could engage in certain physical activities. The ALJ's ultimate conclusions were, therefore, consistent with the findings of Dr. Travis both in terms of the limitations Mr. Ponds had and in terms of those he did not.

While physicians' opinions about a claimant's abilities and restrictions constitute relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 16-3p. Opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). The court considers a doctor's evaluations of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal

7

consequences of his [or her] condition." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative of the claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c). The testimony of a one-time consulting examiner is not entitled to any special consideration, and the ALJ is not under any burden to articulate specific reasons for assigning or declining to assign weight to such an examiner's opinion. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2).

The ALJ made findings of the plaintiff's RFC after considering Dr. Travis' findings and concluding those findings were consistent with the ability to perform a range of medium work. (R. 30, 32). Therefore, to the extent Dr. Travis offered an assessment of Mr. Ponds' limitations, her assessment was properly credited by the ALJ. Even assuming the ALJ erred by characterizing Dr. Travis' findings as an "opinion" which was capable of being granted substantial weight, the error was harmless because the ALJ was not required to defer to Dr. Travis' opinion at all. Further, there is no evidence to suggest the ALJ reached any conclusion solely on the basis of Dr. Travis' findings. Rather, the ALJ credited Dr. Travis' findings to the extent they were consistent with the totality of the medical record.

The court notes the ALJ found Mr. Ponds suffered from emphysema and degeneration of the lumbar spine, both of which he classified as severe impairments. (R. 27). Thus, the ALJ did not ultimately conclude Mr. Ponds had "no limitations," just that he was able to perform some work and was not totally disabled. This conclusion is consistent with the findings of Dr. Travis and with the rest of the medical record. Because it appears the evidence submitted from Dr. Travis' evaluation of Mr. Ponds was appropriately considered by the ALJ and the ALJ's ultimate conclusions are supported by substantial evidence, the court finds this argument presents no basis for reversal.

### B. Dr. Timberlake's Opinion

Mr. Ponds contends the ALJ erred in rejecting the opinion of Dr. Timberlake. (Doc. 12 at 6-7). Dr. Timberlake concluded Mr. Ponds was "completely and totally disabled to do gainful work now or in the future." (R. 272). As the ALJ noted, Dr. Timberlake spent fifteen minutes with Mr. Ponds before offering this diagnosis. (R. 32). The ALJ found Dr. Timberlake "did a cursory examination based on his progress notes, which was not well supported by the medically acceptable clinical and laboratory diagnostic techniques." (*Id.*). The ALJ also found "the limitations imposed by Dr. Timberlake are inconsistent with the presentation of the claimant and the claimant's activity level noted in his function report." (R. 33).

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. *Lewis,* 125 F.3d at 1440. The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence. *Marbury v. Sullivan,* 957 F.2d 837, 841 (11th Cir. 1992). The Eleventh Circuit has found good cause to afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips,* 357 F.3d at 1240-41. The ALJ must clearly articulate the reasons for rejecting the treating physician's opinion. *Id.* at 1241.

The record shows the ALJ did not "reject" the opinion of Dr. Timberlake, as Mr. Ponds suggests. The ALJ merely noted Dr. Timberlake's opinion was assigned "little weight." (R. 33). The ALJ articulated good cause for assigning little weight to the opinion of Dr. Timberlake by expressly stating Dr. Timberlake's opinion was "inconsistent with the presentation of the claimant and the claimant's activity level noted in his function report." (*Id.*). This alone is

9

sufficient to satisfy the ALJ's burden, as articulated in *Phillips*, 357 F.3d at 1240-41, before assigning less weight to the opinion of a treating physician.  Further, although the ALJ did not use the exact word "conclusory" to describe Dr. Timberlake's opinion, the ALJ expressed concern at the "cursory" nature of the examination and the fact that Dr. Timberlake had only seen Mr. Ponds once at the time he formed his opinion.  Because the ALJ made the appropriate findings and stated his reasons clearly on the record, the court finds it was appropriate to assign little weight to the opinion of Dr. Timberlake.

### C.  The Appeals Council's Consideration Of Additional Evidence

Finally, Mr. Ponds contends the Appeals Council erred in refusing to consider the opinion of Dr. Travis.  (Doc. 12 at 8).  Dr. Travis completed a Medical Source Statement and Clinical Assessment of Pain on July 24, 2014.  (R. 318-19).  This evidence was submitted to the Appeals Council as an attachment to Mr. Ponds' appeal.  (R. 16-21).  The Appeals Council indicated it considered this evidence in deciding whether there was a basis for changing the decision of the ALJ.  (R. 2).  Specifically, the Appeals Council stated:

> We also looked at [the] medical source statement completed by Judy Travis, M.D[.,] dated July 24, 2014.  The Administrative Law Judge decided your case through May 29, 2014.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before May 29, 2014.

(*Id.*).

The Appeals Council will only consider additional evidence submitted on appeal under narrow circumstances.  20 C.F.R. § 404.970(b).  The Appeals Council did not find any of the applicable circumstances, and neither does the court.  (R. 1).  Therefore, the Appeals Council properly refused to review the ALJ's decision.

10

Moreover, and contrary to Mr. Ponds' contention, it is clear from reading the full statement of the Appeals Council that the Council did consider the evidence of Dr. Travis' medical source statement and the clinical pain assessment. This evidence might have required reconsideration of the ALJ's decision if it represented evidence that was new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(a)(5); 404.970(c). However, the Appeals Council found that this information related to Mr. Ponds' condition as of July 24, 2014, while the disability period that was the subject of the ALJ's decision ended May 29, 2014.

Mr. Ponds is mistaken in characterizing the Appeals Council's action as a refusal to consider the evidence. The Appeals Council correctly pointed out that the evidence submitted after the ALJ's decision was not relevant. Put another way, the Appeals Council properly received and considered, but did not ultimately act upon, the chronologically irrelevant evidence submitted on appeal. The court finds no error in the Appeals Council's action.

## IV.  CONCLUSION

Upon review of the administrative record and considering all of Mr. Ponds' arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 31st day of March, 2017.

*/s/ Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE